929 F.2d 702
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald B. SMITH, Thomas M. Waller, Jerome A. Johnson,
Michael R. Slayback, John P. Burns, Daniel F.
Tiemeier, Richard S. Rhodes, Larry J.
Powell, Plaintiffs-Appellants,
v.
The CITY OF CINCINNATI, and Scott Johnson, Defendants-Appellees.
 No. 90-3139.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1991.
 
 On Appeal from the United States District Court for Southern District of Ohio, No. 87-00381; Carl B. Rubin, J.
 S.D.Ohio
 REMANDED.
 Before MERRITT, Chief Circuit Judge, NATHANIEL R. JONES, Circuit Judge, and WELLFORD*, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 On August 13, 1981 a consent decree was entered between the United States Department of Justice, and Queen City Lodge No. 69, Fraternal Order of Police and the City of Cincinnati in United States v. Cincinnati, Civ. No. C-1-80-369 (Aug. 13, 1981). That decree was the consequence of a Justice Department complaint with regard to inadequate black representation in the Cincinnati police force and brought about a change in civil service laws as applied to future promotions in that department.
 
 
 2
 Ohio civil service law provides that when vacancies occur in the complement (authorized number) of police sergeants (the area of our concern in this controversy), those vacancies should be filled by appointment of the highest ranking candidate from the eligibility list. Ohio Rev.Code Sec. 124.44. Eligibility lists are created after examinations are given to interested applicants. The Ohio Code provides that if there is a vacancy, but no eligibility list, then an exam must be held within sixty days. Thus, the triggering event for the whole promotion process is the existence of a vacancy.
 
 
 3
 The consent decree modifies this civil service promotion system in three ways important to this case. First, it outlines a procedure called "double filling" to increase the number of blacks and women promoted to the rank of sergeant. If, after the complement is filled, less than 25% of the complement consists of blacks or women, the next available black or woman is to be promoted until such minorities comprise 25% of the whole. Consent Decree p 2B; p 3(c)(4). Because this double fill process results in an inflated number of promotions to the rank of sergeant, the consent decree makes a second modification to balance the effect of the double filling. The decree allows the City some control over the inflation by modifying the definition of the term "vacancy" in civil service law:
 
 
 4
 [a] vacancy for promotion purposes shall not exist in the complement until such time as the total number of persons holding the rank of sergeant falls below the complement established by the "Notice of Complement."
 
 
 5
 Consent Decree p 3C(4). Thus, even when a vacancy opens, there is no vacancy for the purpose of the civil service law, Ohio Rev.Code Sec. 124.44, until the actual number of sergeants falls below the ceiling complement level. When the actual number of sergeants falls below the complement, the usual civil service rules then apply for new vacancies as they occur according to the process set up in Ohio Rev.Code Sec. 124.44.
 
 
 6
 Finally, the consent decree outlines procedural steps in the promotion process. The decree provides that promotion eligibility lists are to extend for a one year period. Consent Decree p 3(C)(2). Before 120 days prior to the expiration of the eligibility list the City is required to post a "Notice of Complement." Consent Decree p 3C(3). This notice of complement sets the authorized number of police sergeants effective the day after the expiration of the then-current eligibility list. At the time of entry of the consent decree the sergeant complement numbered 127.
 
 
 7
 The city administration allegedly prepared a notice of complement setting the complement of sergeants at 115 to be effective November 3, 1982, which it reproduced and distributed with instructions for posting. The number of police sergeants was allowed to decrease through natural attrition to 115 by July 28, 1985, and on August 6, 1985, an eligibility exam was held. On September 10, 1986, when those on the eligibility list due to the August 6, 1985, exam were last eligible, the complement was determined to be full and no promotions were made. At that time the complement allegedly had been raised by the City Council to 120. The plaintiffs claim that the complement was 127 and that the next seven people in line, plaintiffs plus two additional minority plaintiffs, should have been promoted.
 
 
 8
 On May 5, 1987, plaintiffs, nine officers of the Cincinnati police force who were not then sergeants[1] (Smith), filed this complaint seeking declaratory judgment against the City of Cincinnati and its manager, Scott Johnson, in state court. The complaint alleged that the City failed to prepare and post a notice of complement in accordance with the consent decree. The complaint stated that as a result of this failure the complement was to remain at 127 and that therefore the plaintiffs had been denied their right to promotion under Ohio Revised Code Sec. 124.44.
 
 
 9
 On May 18, 1987, the case was removed to district court. The plaintiffs were allowed to amend their complaint to include an allegation that the City manipulated the complement figure. The district court dismissed the complaint finding that the "litigation ... [was] essentially a collateral attack upon the Consent Decree." The district judge concluded that the decree had not been violated by the City and dismissed on that basis.
 
 
 10
 At oral argument counsel for the plaintiffs conceded that they were not challenging the validity of the consent decree. Rather they were challenging the City's actions under state law and sought a remedy which would not impinge on the terms or validity of the consent decree.
 
 
 11
 Under the Supremacy Clause the consent decree, which derives from federal law, takes precedence over Ohio civil service law if there is conflict between the two. Brown v. Neeb, 644 F.2d 551, 563-64 (6th Cir.1981); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971). To the extent that the district court decision applied this principle, we find no error in its rationale. Plaintiffs seem to take no issue with this aspect of the case. The state law and its promotional procedures and alleged violation of state requirements is at issue, and plaintiffs maintain that state law may be followed without any necessary conflict with the consent decree.
 
 
 12
 The district court opinion does not clearly resolve these pendant issues of state law. For instance, the court states that it is unclear whether the notice of complement was posted as required in the consent decree, and it is uncertain, what effect that failure would have on compliance by the City with Ohio civil service law. In addition, the district court stated that "[t]he authority to establish the 'complement' of sergeants is not completely clear." We are unable to determine the basis of the district court statement that the complement had been set at 115 on November 3, 1982. While noting that the consent decree would not be violated if any of a number of alternative procedures were used to set the complement, the district court did not explicitly address how the complement was set in this case and whether the method utilized was in violation of state law. Finally, in the face of questions concerning the validity of the complement figure the City claims, it is not clear whether the City violated Ohio Rev.Code Sec. 124.37, which requires demotion through rank to abolish positions rather than abolishing positions by attrition.
 
 
 13
 For these reasons we REMAND to the district court the pendant issues of state law with the observation that the court may choose to exercise its discretion to send these issues of state law back to state court for resolution. United Mineworkers v. Gibbs, 383 U.S. 715, 726-27 (1966).
 
 
 
 *
 JUDGE WELLFORD took senior status effective January 21, 1991
 
 
 [1]
 Since the action began, seven of the nine plaintiffs have been promoted to the rank of sergeant